**CLOSED**

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
TIMOTHY SMITH,                          :
                                        :
                    Petitioner,         :        Civil Action No.  04-3812 (JAP)
          v.                            :
                                        :        **OPINION**
UNITED STATES OF AMERICA,               :
                                        :
                    Respondent.         :
_____         :


Appearances:


CARL D. POPLAR
1010 Kings Highway South, Bldg 2
Cherry Hill, NJ 08034
          Attorney for Petitioner


CHRISTOPHER J. CHRISTIE
United States Attorney
HOWARD WEINER
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
          Attorneys for Respondent

PISANO, District Judge.

Before the Court is Timothy Smith's ("Smith") petition to vacate, set aside, correct, amend or modify his sentence under 28 U.S.C. § 2255.  The United States filed an answer in response to this motion, which was followed by Smith's Reply and consequently by the Government's Sur Reply.  The Court resolves this petition without oral argument, as permitted by Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court denies the petition.

**I. Background**

In an indictment, Smith was charged with conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1), and convicted by a jury on April 5, 2002.  He was sentenced in this Court to a term of life imprisonment, followed by ten years of supervised release.  Smith appealed and the Court of Appeals for the Third Circuit affirmed on May 13, 2003.  His conviction became final on August 11, 2003, when the period for seeking a writ of certiorari expired.

On June 24, 2004, the United States Supreme Court issued its opinion in *Blakely v. Washington* and held that the determinate sentencing scheme of Washington State violated a defendant's Sixth Amendment right to a jury trial.  542 U.S. 296, 124 S. Ct. 2531 (2004).  The Court reasoned that the imposition of sentences based on facts other than those found by the jury or admitted by the defendant was unconstitutional.  *Id.*  Furthermore, the *Blakely* Court explicitly limited its holding to the state sentencing scheme and refused to extend it to the United States Sentencing Guidelines ("U.S.S.G.").  *Id.* at ___, 124 S. Ct. at 2538 n.9.

Less than two months after *Blakely*, Smith filed the present petition pursuant to 28 U.S.C.

2

§ 2255.  A motion to vacate, set aside, or correct a sentence under Section 2255 has a one-year period of limitation, which runs from the latest of "the date on which the judgment of conviction becomes final . . . [or] the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  *Lloyd v. United States*, 407 F.3d 608, 611 (3d Cir. 2005) (citation omitted).  Smith filed the present petition one day before the one-year statute of limitations expired.

In his petition, Smith argued that the facts supporting the enhancements he received were not found by a jury beyond a reasonable doubt but rather by a judge by a preponderance of the evidence, and thus, that the sentence was imposed in violation of *Blakely*.  He further claimed that the Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), decided years before his conviction became final but not referenced on direct review, also was applicable to his case.  *Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury."  *Id.* at 524.  Smith argued that in light of *Blakely*, *Apprendi* should be extended to the U.S.S.G.

On January 15, 2005, the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. ___, 125 S.Ct. 738 (2005), conclusively holding that the U.S.S.G. violated the Sixth Amendment right to a jury trial, in that they permitted judges to find facts that lead to a greater sentence than that authorized by the facts established by a plea of guilty or a jury verdict.  *Id.* This decision prompted Smith to file a Reply Memorandum on April 22, 2005, in which he argued that *Booker* strengthened his position by retroactively applying *Blakely* and *Apprendi* to the U.S.S.G., thus rendering his sentence unconstitutional.  (Petitioner's Reply Memorandum, referred to herein as "Pet.'s Reply Memo" at 1-2).

3

## II. Legal Discussion

### A. The Section 2255 Standard

A prisoner in federal custody may file a motion in the trial court challenging the lawfulness of his sentence.  28 U.S.C. § 2255; *Morelli v. United States*, 285 F. Supp. 2d 454, 458 (D.N.J. 2003).  A prisoner has been unlawfully sentenced if his sentence: "(1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack."  *Morelli*, 285 F. Supp. 2d at 458 (citing 28 U.S.C. § 2255).  To establish a right to habeas corpus relief, a prisoner must demonstrate that the sentence has a "fundamental defect resulting in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  *Id.* at 458-59 (internal quotations omitted).

### B. The Petition Must Be Considered Under the Recent *Booker* Decision.

Smith initially based his motion on the premise that his sentence was imposed in violation of *Blakely*.  However, the Third Circuit recently noted in *Lloyd* that such an "argument is now, of course, governed by the intervening decision . . . in *Booker*, which concluded that the holding in *Blakely* applies to the Federal Sentencing Guidelines."  407 F.3d at 611.  The *Lloyd* Court further qualified its rationale, noting that in discussing such issues, "some courts refer to the *Blakely* rule, while others refer to the *Booker* rule."  *Id.* at 611 n.1 (quotations omitted).  It nevertheless decided that it is "the date on which *Booker* issued . . . that is the appropriate dividing line," since *Blakely* "reserved decision about the status of the Federal Sentencing Guidelines," while Booker actually established a new rule applicable to the federal system and to the issues at hand.  *Id.* (citing *McReynolds v. United States*, 297 F.3d 479, 481 (7th Cir. 2005)).  Accordingly, while styled as a claim under *Blakely*, Smith's claim is asserted under *Booker* and

4

the Court will review it as such.

**C. *Booker* Does Not Apply Retroactively to Cases on Collateral Review.**

A new rule of criminal procedure generally is not "applicable to those cases which have have become final before the new rule is announced." *Lloyd*, 407 F.3d at 611 (citing *Teague v. Lane*, 489 U.S. 288, 310 (1989)). The same bar applies to a "federal habeas corpus petitioner who wishes to collaterally attack his conviction, unless an exception applies." *Lloyd*, 407 F.3d at 611. Therefore, since his conviction became final prior to the announcement of the new rule in the present case, Smith can only benefit from the *Booker* decision if it were retroactively applicable.

While considering whether *Booker* retroactively applied to cases on collateral review, the Third Circuit recently engaged in a three-step inquiry derived from the Supreme Court in *Teague*. *Id.* First, the court determined whether the conviction of the petitioner became final prior to *Booker*. *Id.* Second, the court considered whether *Booker* announced a procedural rule that qualified as "new." *Id.* at 611-12. Third, having established the presence of the previous conditions, the court then determined whether the rule nevertheless qualified "under one of *Teague*'s two narrow exceptions to the non-retroactive application of such rules." *Id.* at 612. Applying the same test to the present case, this Court finds that *Booker* may not be applied retroactively to Smith's habeas corpus petition.

**1.     The Conviction Became Final Prior to the *Booker* Rule.**

The parties do not dispute that Smith's conviction became final on or around August 11, 2003. *See Kapral v. United States*, 166 F.3d 565, 572 (3d Cir. 1999) (explaining that when a defendant does not seek a writ of certiorari, the judgment of conviction becomes final upon the expiration of the time allowed for certiorari review); *see also* 28 U.S.C. § 2101(c) (allowing for

5

ninety days, post-conviction, for certiorari review).  The date on which Smith's conviction became final is ten months prior to the issuance of the decision in *Blakely*, and seventeen months prior to the issuance of the decision in *Booker*.  Clearly, then, both *Blakely* and *Booker* would have to be given retroactive effect in order for them to be applied to the present case.

> **2.     The *Booker* Rule Constitutes a New Rule of Criminal Procedure.**

The primary dispute between the parties concerns whether *Booker* constitutes a "new" rule of criminal procedure for purposes of retroactive application to collateral cases.  Smith argues that *Booker* reworked a rule previously articulated by the Supreme Court in *Apprendi*, which was decided before his conviction became final on direct review.  (Pet.'s Reply Memo at 6-9.)  He further contends that *Blakely* merely extended the *Apprendi* premise to the sentencing scheme of Washington State, and that *Booker* further extended it to the U.S.S.G.  Pursuant to this reasoning, the consequent *Blakely* and *Booker* decisions would no longer be considered new, and a *Teague* analysis would be inapplicable to the present case.

The *Lloyd* court considered this argument and rejected it, holding that the *Booker* decision created a "new rule of criminal procedure for purposes of *Teague*."  *Lloyd*, 407 F.3d at 612.  In making this determination, the Third Circuit considered the "legal landscape" at the time the conviction of the movant became final.  *Id.*  A finding that *Booker* "was *dictated* by the then existing precedent [that] was apparent to all reasonable jurists," would mean that it had not created a new rule and *Teague* would be inapplicable.  *Id.* (quoting *Beard*, 542 U.S. at ___, 124 S.Ct. at 2511).  Instead, the Third Circuit found that the federal judiciary was "deeply divided" on the issue of whether *Blakely* rendered the U.S.S.G. unconstitutional.  *Lloyd*, 407 F.3d at 613.  Noting the conflicting opinions issued on the matter, the court reasoned that such "differences amongst reasonable jurists . . . suggest that the rule resolving those differences was new," and

6

further added that every other court of appeals to have considered the issue has come to the identical conclusion.  *Id.*

### 3.    The *Booker* Rule Does Not Constitute a "Watershed Rule of Criminal Procedure" for Purposes of *Teague*.

Having concluded that Smith's conviction became final prior to *Booker* and that *Booker* announced a new rule of criminal procedure, this Court must now consider whether the present case nevertheless qualifies as an exception to the bar on retroactivity for collateral cases.  The applicable exception was articulated in *Teague v. Lane*, in which the Supreme Court held that a new rule of criminal procedural may apply retroactively if it is deemed a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceedings."  *Id.* at 612 (citing *Teague*, 489 U.S. at 311).

The *Lloyd* Court explained that "to say that this exception is extremely narrow is to understate the issue for, as the Supreme Court itself has noted, it has yet to find a new rule that falls under the *Teague* exception."  *Lloyd*, 407 F.3d at 614 (quoting *Beard*, 542 U.S. at ___ (2004).  Furthermore, every federal court of appeals to have "considered whether the new *Booker* rule constituted a watershed rule that would satisfy *Teague*'s second exception has held that it does not and, thus, has held that *Booker* does not apply retroactively to cases on collateral review."  *Lloyd*, 407 F.3d at 614.

Smith argues that the resulting increase in standard of proof created by the change to advisory sentencing guidelines "represents a watershed change in criminal procedure," and as such must be applied retroactively to cases on collateral review.  (Pet.'s Reply Memo at 14.) However, the Third Circuit found this argument insufficient to satisfy a *Teague* exception. Adopting the reasoning of the Seventh Circuit, the *Lloyd* Court stated that *Booker* could not be a

7

watershed change that improved either the fairness or accuracy of the criminal process since sentences "would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system." *Lloyd*, 407 F.3d at 615 (citing *McReynolds*, 397 F.3d at 481). As such, the Third Circuit held that the *Booker* rule did not constitute an exception to the bar on retroactivity set by *Teague*. *Id.* Accordingly, the new rule of criminal procedure announced in *Booker* is not retroactively applicable to the present case.

### D. Since *Booker* Is Not Retroactively Applicable To Cases On Collateral Review, Smith's *Apprendi* Claim Must Be Denied.

Having concluded that *Booker* does not retroactively apply to cases on collateral review, this Court also rejects Smith's alternative claim that *Apprendi* would be applicable to his case. Both parties have extensively briefed the issue of whether this claim was procedurally barred as a result of not being raised on direct review, despite the fact that the case law was available to Smith. Nevertheless, this is not an issue that must be decided by this court.

Assuming arguendo that the claim is not procedurally barred, *Apprendi* becomes applicable to the present case only when interpreted under the later decision of *Booker* which applied the rule to the U.S.S.G. Having already noted that *Booker* is not retroactively applicable to cases on collateral review, this Court thereby concludes that Smith's *Apprendi* claim has no merit, regardless of whether it was waived.

### E. Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, the applicant must "demonstrate that reasonable jurists would find the district court's

8

assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 472,

484 (2000).  For the reasons noted above, Smith fails to make a showing that would satisfy the

requirement for a certificate of appealability.  Specifically, Smith is unable to show that he has

been denied a constitutional right otherwise available to a person in his position.  Accordingly,

the Court shall not issue a certificate of appealability.


**III. Conclusion**

      For the reasons expressed above, Smith's motion to vacate, set aside or correct his

sentence under 28 U.S.C. § 2255 is denied.  Furthermore, under 28 U.S.C. § 2253(c)(2), a

certificate of appealability will not issue.


s/ Joel A. Pisano        

JOEL A. PISANO, U.S.D.J.

Orig:  Clerk
cc:     All parties
       File

Dated: July 6, 2005